IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PETER MOSETI, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 3:25-CV-1313-K-BW |
| | § | |
| MARY KAY, | § | |
| Defendant. | § | Referred to U.S. Magistrate Judge[1] |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is Plaintiff Peter Moseti's Motion to Compel filed on September 18, 2025. (Dkt. No. 67 ("Mot.").) Defendant Mary Kay filed its response in opposition to the motion on October 9, 2025. (Dkt. No. 70 ("Resp.").)[2] The Court concludes that the Motion should be granted in part as to Mary Kay's response to Interrogatory No. 2 and denied in all other respects. The Court also implements new discovery procedures for this case.

## I. BACKGROUND

Moseti, proceeding pro se, originally filed this action against his former employer in the Eastern District of Texas. (Dkt. No. 1.) According to the

---

[1] This pro se case has been referred to the undersigned magistrate judge for case management under Special Order 3-251. (Dkt. No. 35.)

[2] Both parties have filed materials in support of their positions, but neither has complied with court rules requiring that supporting materials be filed in a separate self-contained appendix that is sequentially paginated. *See* N.D. Tex. L. Civ. R. 7.1(i). Although the Court does not strike these filings, it encourages the parties to comply with the rule in the future, as it "streamlines the resolution of motions by making it easier for the court to locate [and cite] materials in appendices that are relied on by the parties." *State Farm Life Ins. Co. v. Bryant*, No. 3:18-CV-1628-L, 2019 WL 7938266, at *6 (N.D. Tex. May 16, 2019).

allegations in his amended complaint (Dkt. No. 41 ("Am. Compl.")), Moseti, a Black man, began working as a facilities technician in October 2023 and was terminated on January 22, 2024, during his 90-day probationary period. (*Id.* ¶¶ 8, 10.) Moseti states that he was told that excessive personal phone usage and a lack of fit with company culture resulted in his termination, but he alleges that white coworkers committed similar or more serious workplace violations without consequence. (*Id.* ¶¶ 8-16.) Moseti asserts a claim for race discrimination under 42 U.S.C. § 1981 and seeks damages in an amount of $6,228,000. (*Id.* ¶¶ 17-21.)

Moseti has frequently filed discovery motions and motions for sanctions. While the case was pending in the Eastern District, he filed a motion for sanctions (Dkt. No. 19), a motion seeking to compel an admission (Dkt. No. 25), a motion to compel discovery (Dkt. No. 28), and a motion to deem an affidavit perjurious (Dkt. No. 29). Those motions were denied without prejudice when the case was transferred to this district. (Dkt. No. 33.)

Once in this district, Moseti sought to pursue his motions even before he had served Mary Kay with a summons and complaint. (*See* Dkt. Nos. 38, 39.) Then, on the day Moseti filed his amended complaint and proof of service (*see* Dkt. Nos. 41, 42), he also filed a motion for sanctions under Fed. R. Civ. P. 11 based on an affidavit that Mary Kay provided with which he disagreed (Dkt. No. 43). And, even before the parties submitted a joint report following the Rule 26(f) conference, Moseti filed a motion seeking an order compelling Mary Kay to modify its initial

disclosures.  (Dkt. No. 50.)  About two weeks later, he filed a motion for sanctions under Rule 37.  (Dkt. No. 56.)

The Court denied each of these motions.  (Dkt. No. 64.)  It explained to Moseti that his mere disagreement with the affidavit statement he contested—which touched on the merits of the case—did not render the statement demonstrably false, much less show it to be perjury or subject to Rule 11 sanctions.  (*Id.* at 2-3.)  Similarly, the Court denied Moseti's motion seeking an amended disclosure because, again, his disagreement with information in it did not make the disclosure objectively false rather than a mere disagreement.  (*Id.* at 3-4.)

On September 10, the Court denied Moseti's motion for sanctions pursuant to Rule 37 on two independent bases.  (Dkt. No. 66.)  First, the motion did not contain a certificate of conference as required by N.D. Tex. L. Civ. R. 7.1.  The Court explained that the conference requirement is "not a mere formality," but instead exists to promote the resolution of discovery disputes and avoid the needless obligation of limited court resources.  (*Id.* at 2.)  The Court also denied the motion on the merits, as the motion amounted to little more than "generalized and inflated accusations about Defendant's discovery responses" and did not point to any specific deficiency in Mary Kay's discovery responses.  (*Id.* at 3.)  The Court cautioned Moseti about the manner in which he was prosecuting his lawsuit and filing discovery motions, noting that it was the third unmeritorious motion he had filed seeking an order against Mary Kay.  (*Id.* at 3-4.)

Moseti filed the instant Motion eight days later.  Because the Motion contains indications of having been prepared using generative artificial intelligence ("GAI") without proper disclosure—meaning Moseti might be deemed to have made a false certification under court rules, *see* N.D. Tex. L. Civ. R. 7.2(f)—the Court admonished Moseti about his responsibility to disclose the use of GAI.  (Dkt. No. 68 at 3.)  And, while the Court withheld any opinion concerning the merits of the instant Motion to await the completion of briefing, it observed that the Motion appears to concern the same discovery responses that were the subject of a prior discovery motion that had been denied.  (*Id.* at 1.)  The Court called Moesti's attention to the possibility of monetary sanctions under Fed. R. Civ. P. 37(a)(5)(B) if ultimately the motion is deemed unmeritorious.  (*Id.* at 1-2.)

In the Motion, Moseti raises complaints about Mary Kay's responses to eight requests for admission, seven interrogatories, and six requests for production.  (Mot. at 4-6.)  The argument section of Moesti's motion is comprised of one paragraph, and he cites no authority other than references to Rules 33, 34, and 36.  (*Id.* at 7.)  Mary Kay has filed a response (Dkt. No. 70) and attached amended interrogatory responses and a privilege log (Dkt. No. 70-1).  Moseti did not file a reply.

## II.  LEGAL STANDARDS

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties'

-4-

resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Under Fed. R. Civ. P. 37(a)(3)(B), a party seeking discovery may move the Court for an order compelling production of information when another party from whom discovery is sought fails to produce requested documents. "For purposes of Rule 37(a), 'an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond.'" *Harper v. City of Dallas, Texas*, No. 3:14-CV-2647-M, 2017 WL 3674830, at *4 (N.D. Tex. Aug. 25, 2017) (quoting Fed. R. Civ. P. 37(a)(4)).

## III. ANALYSIS

### A. Requests for Production.

Moseti first seeks a motion to compel supplemental responses to requests for admission propounded under Fed. R. Civ. P. 36. Rule 36 authorizes a party to serve on another party "a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1) relating to: (A) facts, the application of law to fact, or opinions about either; and (B) the genuineness of any described documents." Fed. R. Civ. P. 36(a)(1). The rules provides that, if a matter is not admitted, "the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it." Fed. R. Civ. P. 36(a)(4). "The purpose of Rule 36(a) is to narrow the issues for trial to those which are genuinely contested." *Sky Techs. LLC v. IBM, Inc.*, No. 2:03-CV-454 (DF), 2006 WL 8441534,

at *6 (E.D. Tex. Feb. 13, 2006) (quoting *United Coal Companies v. Powell Const. Co.*,
839 F.2d 958, 967 (3d Cir. 1988)).

Moseti seeks to compel additional responses to Requests for Admission
("RFAs") Nos. 1, 2, 4, 5, 6, 8, 9, and 10.  (Mot. at 2-4; *see* Dkt. No. 67-4.)

RFA No. 1 requests admission that "Plaintiff was terminated on January 22,
2024."  Mary Kay denied the RFA.  (Dkt. No. 67-4 at 1.)  Moseti asserts that Mary
Kay must either admit the fact or "explain why it cannot [admit the fact] after
reasonable inquiry."  (Mot. at 2.)  But Rule 36 requires only that a responding party
admit, deny, *or* explain in detail why it is unable to truthfully do either.  Fed. R. Civ.
P. 36(a)(4).  "Simply stating 'denied' is often sufficient."  *Wang v. Omni Hotels Mgmt.
Corp.*, No. 3:18-CV-2000 (CSH), 2021 WL 5904021, at *3 (D. Conn. Dec. 14, 2021)
(citing *United Coal Companies*, 839 F.2d at 967).  That is precisely what Mary Kay
did—it stated "DENY," without any objection or qualification.  Because Mary Kay
has denied the RFA, "the provision in Rule 36(a) requiring a statement of reasons
why the party cannot truthfully admit or deny has no application."  *United Coal
Companies*, 839 F.2d at 967.  Although Moseti might explore the reasons underlying
Mary Kay's denial of RFA No. 1 through other means of discovery, he is not entitled
to an order compelling a narrative explanation under Rule 36.

RFA No. 2 requests that Mary Kay "[a]dmit that no written or video
documentation exists to prove Plaintiff was hiding."  (Dkt. No. 67-4 at 1.)  Mary Kay
responded, "DENY."  Moseti believes the denial is inconsistent with Mary Kay's
response to Interrogatory No. 6, which requested that the company "[d]escribe all

communications and meetings involving Plaintiff's termination, including who was present, what was discussed, and whether any audio, notes, or minutes exist." (*See* Mot. at 3; Dkt. No. 67-5.) Moseti states that Mary Kay, in response to the interrogatory, stated that no such notes or audio exist. (Mot. at 3.) Contrary to Moseti's motion, Mary Kay did not in response to Interrogatory No. 6 deny that there is no written or video documentation "to prove Plaintiff was hiding." (*See* Dkt. No. 67-4 at 1.) It instead stated there that it does not possess any audio recording or notes or minutes taken at a meeting in which Plaintiff's employment was terminated. The two responses are not inconsistent. The Motion is denied as to this request.

RFA No. 4 asks Mary Kay to admit "that coworkers Joe, Jason, Ryan, Freddy, John, and Kelly engaged in comparable or worse misconduct than Plaintiff and were not terminated." (Dkt. No. 67-4 at 1.) Mary Kay responded, "DENY." (*Id.*) Moseti disputes the accuracy of the denial and demands that Mary Kay be required to "fairly respond or explain the factual basis for its denial." (Mot. at 3.) The Court denies the motion in this respect for the same reasons as RFA No. 1.

RFA No. 5 asks Mary Kay to admit that "Plaintiff was the only Black and non-white technician on staff at the time of termination." (Dkt. No. 67-4 at 1.) Mary Kay responded, "ADMIT as to Defendant's facilities technicians that worked at the R3 facility. DENY that Plaintiff was the only Black technician on staff at Mary Kay." (*Id.* at 2.) Moseti asserts that Mary Kay is required to "clarify and identify the race of each technician it denies" concerning its entire workforce. (Mot. at 3.) Moseti's motion is denied for the same reasons given as to RFA No. 1.

-7-

RFA No. 6 seeks an admission that "David Parrett extended Plaintiff's probation without written justification." (Dkt. No. 67-4 at 2.) Mary Kay responded, "DENY." Moseti contends that the denial "conflicts with Plaintiff's evidence of Jason's phone use on January 19, 2024" and submits that Defendant should be required to "produce the written justification or supplement in its response." (Mot. at 3.) Again, Plaintiff is not entitled to a narrative explanation of the grounds for denying the RFA. The Motion is denied for the same reasons as RFA No. 1.

RFA No. 8 requests that Mary Kay admit that it "has not disciplined Kelly for mocking racial or ethnic groups, specifically his Indian neighbors daily." (Dkt. No. 67-4 at 2.) Mary Kay responded, "DENY." Moseti contends that the response is deficient because Mary Kay neither admitted nor provided disciplinary documentation. The motion is denied in this respect for the same reasons as RFA No. 1.

RFA No. 9 seeks an admission that "Plaintiff complained to Sean Gunter verbally on December 9, 2023 about discriminatory treatment before being terminated." (Dkt. No. 67-4 at 2.) Mary Kay responded, "DENY." (Id.) Moseti suggests that the denial is inconstant with notes "and the fact that only Sean, Joe, and Plaintiff were present." (Mot. at 3.) Moseti does not explain what he means about Sean, Joe, and Plaintiff being present. In any event, the Court denies Moseti's motion as to RFA No. 9 for the same reasons as RFA No. 1.

RFA No. 10 requests that Mary Kay admit that "Plaintiff's EEOC Charge No. 450-2024-06067 was not resolved internally by Mary Kay." (Dkt. No. 67-4 at 2.)

Mary Kay responded, "DENY." (*Id.*)  Moseti, however, erroneously asserts that the

RFA "asks Defendant to clarify its denial," and he asserts that Mary Kay "must

clarify what internal resolution it references or supplement its response." (Mot. at 4.)

The Court denies Moseti's motion in this respect for the same reason as RFA No. 1.

**B. Interrogatories.**

Moseti argues that Mary Kay's responses are deficient as to Interrogatories

Nos. 2, 3, 5, 6, 8, 9, and 10. (Mot. at 4-5.)  On October 3, Mary Kay submitted its

first amended responses to interrogatories. (Dkt. No. 70-1.)

Interrogatory No. 2 directed Mary Kay to "[i]dentify all individuals who had

access to Plaintiff's performance records and disciplinary records during Plaintiff's

employment, and indicate when each person obtained such access." (Dkt. No. 67-5

at 1.  Mary Kay responded that no performance reviews exist, and it initially

identified "Human Resources" as the only department with access to his disciplinary

records, if any. (Dkt. No. 67-5 at 2.)  In its amended response, Mary Kay speficially

identified Alex Lumsden as included within Human Resources. (Dkt. No. 70-1 at 3.)

Moseti asserts that the broad answer of "Human Resources" is vague and argues that

Mary Kay must "identify the individuals and records specifically." (Mot. at 4.)  The

Court grants the motion in part as to this interrogatory.  Mary Kay must specifically

identify each person who participated in the creation, review, or modification of any

disciplinary record pertaining to Plaintiff during his employment at Mary Kay.  The

motion is denied as to this interrogatory in all other respects, including to the extent

Moseti contends that a complete response to the interrogatory requires Mary Kay to specifically identify records, as that information is not requested by the interrogatory.

Interrogatory No. 3 called on Mary Kay to "[d]escribe in detail the reasons for Plaintiff's termination, identifying all dates and facts supporting each reason, and explain why white comparators including Joe, Jason, and Kelly were not terminated for similar conduct." (Dkt. No. 67-5 at 2.) Mary Kay objected to the term "similar conduct" as vague and responded that Joe, Jason, and Kelly did not engage in similar conduct of the same severity or frequency as Moseti. (*Id.*) It further responded that it terminated Moseti for legitimate nondiscriminatory reasons during the probationary period, such as that he "wasted time and failed to engage with his work and his team, including using his personal phone excessively while on-the-clock in violation of policy and did not change his behavior after being appropriately counseled." (*Id.*) Moseti contends that Mary Kay must provide "the conduct, dates, and discipline records for Joe, Jason, and Kelly or definitively state none exist after a reasonable search." (Mot. at 4.) The Court sustains Mary Kay's objection to the term "similar conduct" as vague. Mary Kay represents, however, that it has produced two warnings provided to Joe and Jason and states that no disciplinary records exist as to Kelly. (Resp. at 5.) The Court denies the motion in as to this interrogatory because Moseti has not shown how the response is insufficient.

Interrogatory No. 5 requires Mary Kay to state "whether any Mary Kay employee was ever disciplined or terminated for 'excessive phone usage' or 'not fitting the work culture' during the period of January 2022 to January 2024" and, if

so, provide the name, race, outcome and reasons for discipline or termination.  (Dkt. No. 67-5 at 2.)  Mary Kay objected to the interrogatory as overbroad with respect to all employees of Mary Kay and initially stated that it was investigating the answer and would supplement with terminations or discipline as to facilities technicians supervised by David Parrett, if any.  (Dkt. No. 67-5 at 2.)  In its amended response, Mary Kay stated that there were no facilities technicians supervised by Parrett who were disciplined or terminated for excessive phone usage or not fitting the work culture during that period.  (Dkt. No. 70-1 at 3.)  Moseti filed the motion prior to Mary Kay's amended response and sought a complete response.  Moseti has not filed a reply, and he does not contend that the amended response is deficient in any way.  The Court denies the motion as moot as to this interrogatory.

Interrogatory No. 6 instructed Mary Kay to "[d]escribe all communications and meetings involving Plaintiff's termination, including who was present, what was discussed, and whether any audio, notes, or minutes exist."  (Dkt. No. 67-5 at 2.)  Mary Kay responded that David Parrett and Alex Lumsden were present during the meeting in which Moseti's employment was terminated and described statements made by Parrett and Lumsden.  (*Id.*)  Mary Kay also referred Moseti to documents produced under an identified bates range and stated that it does not possess any audio recording, notes, or minutes from the meeting.  (*Id.* at 2-3.)  Moseti contends that Mary Kay's summary is insufficient and that it must identify responsive emails or minutes and bates numbers.  (Mot. at 5.)  The Court denies the motion with respect to this interrogatory.  The response is sufficient and, as Moseti acknowledges,

-11-

cites specific bates-labeled documents produced. Having not filed a reply, Moseti does not identify any manner in which the response is deficient.

Interrogatory No. 8 called on Mary Kay to "[e]xplain what role Alex Lumsden played in approving or executing Plaintiff's termination, and whether any internal discussion took place about her use of the phrase 'we could terminate for any reason' within 90 days." (Dkt. No. 67-5 at 3.) Mary Kay initially responded by referring to its answer to Interrogatory No. 6 (*id.*), but its amended response also stated that Lumsden was the HR person who supported Parrett's team and collaborated with Parrett and Denny Markovic concerning Moseti's employment, including the decision to terminate him (Dkt. No. 70-1 at 4). It stated there were no internal discussions about her use of the phrase "'we could terminate for any reason' within 90 days." (*Id.*) Moseti's motion takes issue with the original response because, in his view, it is contradicted by other evidence. (Mot. at 5.) He argues that Mary Kay "must amend and explain specifics." (*Id.*) Mary Kay has amended, and, having not filed a reply, Moseti does not dispute the sufficiency of the amended response. The Motion is denied as moot with respect to this discovery request.

Interrogatory No. 9 requires Mary Kay to "[i]dentify all individuals who supervised or worked closely with Plaintiff, including coworkers Joe, Jason, Freddy, John, and Kelly, and provide a brief summary of their employment records during the time they worked with Plaintiff." (Dkt. No. 67-5 at 3.) Mary Kay initially objected to the interrogatory on the basis that it was overbroad and sought information that was irrelevant or disproportional to the needs of the case in seeking

a "brief summary" of others' employment records.  (*Id.*)  Subject to that objection, it stated that Moseti was supervised by Parrett and listed the person who was Moseti's team lead and three others who were also facilities technicians at the same facility during Moseti's employment.  (*Id.*)  In its amended response, Mary Kay also referred to specified documents by bates label in its document production, which it represents are discipline records related to two of the identified coworkers.  (Resp. at 7; Dkt. No. 70-1 at 4.)  Moseti contends that Mary Kay must "supplement with job titles, dates of employment, supervisors, and discipline for each coworker named."  (Mot. at 5.)  The Court denies the motion with respect to this item because the interrogatory does not specifically call for the information he demands.  In any event, the motion is moot in this respect, as Moseti did not reply and does not identify any deficiency in the amended response.

Interrogatory No. 10 requires Mary Kay to "[d]escribe what procedures or policies, if any, govern terminations during a 90-day probation period, and identify whether Plaintiff's termination followed them."  (Dkt. No. 67-5 at 3.)  Mary Kay responded by referring to a document identified by bates label—which is a page from its Employee Handbook concerning employment at will (Dkt. No. 67-8 at ECF p. 43)—and stated that it followed its policies and procedures regarding Plaintiff's termination.  (*Id.*)  Without explanation, Moseti asserts that Mary Kay has not produced the policy or explained its compliance.  (Mot. at 5.)  He demands that Mary Kay be required to produce the "full policy and explain how Plaintiff's termination complied with it."  (*Id.*)  Mary Kay responds that the policy stated in the

employee handbook is precisely the policy that Moseti demands and that the interrogatory does not require "explanation" about how it complied with the policy. The Motion is denied as to this discovery request because Mary Kay has properly responded to the interrogatory.

## C. Requests for Production.

Moseti requests Court intervention to require Mary Kay to supplement its responses to Requests for Production ("RFP") Nos. 5, 6, 7, 8, 9, and 10. (Mot. at 5-6.) Mary Kay has responded and produced documents. It also has produced a privilege log with two entries: one between Mary Kay employees and in-house counsel seeking legal advice with respect to Moseti's employment and the other between Mary Kay employees and outside counsel concerning Moseti's EEOC charge of discrimination. (Dkt. no. 70-1 at ECF p. 9.)

RFP No. 5 requests "documents showing when John (the newer hire) received access to the METISIS [sic] automation system and any records explaining why Plaintiff did not receive access first." (Dkt. No. 67-6 at 2.) Mary Kay objected to the request as overbroad and seeking irrelevant information. (*Id.*) It stated that it granted the coworker at issue access to the Metasys system on January 19, 2024. (*Id.*) Moseti contends that Mary Kay should be required to produce all "onboarding or IT communications" showing when John was granted access. (Mot. at 5.) Mary Kay contends that the request is "moot" because it disclosed when John received access and produced an email showing when John was granted access. (Resp. at 7.) The Court denies the Motion in this respect because Mary Kay has provided

-14-

documents showing the date that John was given access to the system, and additional onboarding documents relating to John are not relevant to Plaintiff's claims and are not proportional to the needs of the case.

Moseti addresses <u>RFP Nos. 6 and 7</u> together. RFP No. 6 requests "disciplinary records of coworkers Joe, Jason, Freddy, John, and Kelly, including records of tardiness, phone use, insubordination, or other misconduct." (Dkt. No. 67-6 at 2.) Mary Kay objected to the request as overbroad and irrelevant but stated that it would produce responsive documents as to Joe. It represented that there are no documents as to Freddy, John, or Kelly. (*Id.*) RFP No. 7 requires Mary Kay to produce "any internal complaints, HR reports, or investigation based on Joe's tardiness." (*Id.*) Mary Kay objected to the request as overbroad and irrelevant, citing that Plaintiff was not terminated because of tardiness. (*Id.*) It stated, however, that it will produce responsive documents. (*Id.*) Moseti contends that the documents requested are "central" to his assessment of comparators and states that Mary Kay must produce responsive disciplinary and HR records or state under oath that none exist. (Mot. at 6.) In response, Mary Kay states that it has produced responsive documents. The Motion is denied as moot as to these requests because Mary Kay represents that it has produced all responsive documents.

<u>RFP No. 8</u> commands Mary Kay to produce "all notes or records from meetings where Plaintiff's probationary period was discussed or extended." (Dkt. No. 67-6 at 2.) Mary Kay responded that it would produce responsive documents, if they exist. (*Id.*) Moseti argues that, if no such documents exist, Mary Kay must

-15-

state so under oath.  (Mot. at 6.)  In its response, Mary Kay states that it has not found any responsive document but that it will produce any responsive document that is found.  (Resp. at 8.)  Moseti points to no authority requiring that Mary Kay declare the absence of responsive documents under penalty of perjury.  The Motion is denied as moot with respect to this request.

RFP No. 9 directs Mary Kay to "[p]roduce all communications related to Plaintiff's termination date, especially materials referring to the alleged January 17, 2024 'hiding incident' and its documentation (if any)."  (Dkt. No. 67-6 at 2.)  Mary Kay responded that it would produce responsive documents.  (*Id.*)  Moseti argues that Mary Kay must identify documents by bates number or confirm that no such documents exist.  (Mot. at 6.)  Mary Kay states that it has produced responsive documents.  (Resp. at 8.)  The Motion is denied as moot with respect to this request.

RFP No. 10 seeks "all documents reflecting Mary Kay's investigation or response to Plaintiff's EEOC charge (Charge No. 450-2024-06067)."  (Dkt. No. 67-4 at 2.)  Mary Kay asserted attorney-client privilege and work product protection but stated that it would produce documents received from the EEOC in response to any FOIA request.  (*Id.*)  Moseti argues that Mary Kay must produce a privilege log to support any withheld documents.  (Mot. at 6.)  Mary Kay has produced a privilege log, which is attached to its Response.  (Resp. at 8-9.)  It further states that it has not yet received documents from the FOIA request to the EEOC but will produce responsive documents once they are received.  (*Id.*)  Moseti did not file a reply and does not challenge the sufficiency of the privilege log or the forthcoming production

of documents received from the EEOC. The Motion is denied as moot as to this request.

**D. Award of Reasonable Costs under Rule 37.**

Federal Rule of Civil Procedure 37(a)(5) provides that, if a motion to compel is granted in part and denied in part, the Court may issue a protective order authorized by Rule 26(c) and may, after providing an opportunity to be heard, apportion the reasonable expenses for the motion. Fed. R. Civ. P. 37(a)(5)(C). But the rule identifies three circumstances in which the Court should not order the payment of expenses. Fed. R. Civ. P. 37(a)(5)(A)(i)-(iii).

The Court has wholly denied Moesti's Motion save part of one interrogatory response that a proper pre-motion conference could have resolved without court intervention. Because it is not apparent that any circumstance listed in Rule 37(a)(5)(A)(i)-(iii) exists here, the Court will allow Mary Kay to request repayment of its reasonable expenses, including attorney's fees, incurred in responding to the Motion. **No later than November 21, 2025**, the parties must confer—in person or by phone or videoconference—and attempt to agree on whether there are reasons not to award expenses under Rule 37(a)(5) and, if not, the amount of reasonable attorney's fees and costs to be awarded to Mary Kay. If the parties are not able to reach agreement on these issues, Mary Kay may, **no later than December 3, 2025**, file a motion for attorney's fees and costs. If Mary Kay timely files a motion, Moseti

may file a response **within 14 days** of the date the motion is filed, and Mary Kay may file a response **within 7 days** of Moseti's response.[3]

### E.  New Discovery Procedures.

Moseti has manifested a propensity to resort to court intervention to resolve what he characterizes as discovery violations by Mary Kay but that are really disagreements about the merits of the case.  In the six months since this case came to this district, Moseti has filed six motions seeking court orders or sanctions.  (*See* Dkt. Nos. 43, 50, 56, 67, 72, 76.)  The Court has twice admonished him concerning his failure to adhere to court rules, including the requirement that he engage in a good-faith conference before filing motions.  (Dkt. Nos. 66 at 2-3, 68.)  In response to indications that Moseti was using a discovery motion as a threat in the event Mary Kay did not meet his demands (*see* Dkt. No. 50 at 1 (noting in motion filed on July 23 that Plaintiff "gave Defendant until July 22, 2025, to correct the record or face a motion to compel")), the Court explained that the conference requirement is an important feature of court rules that promotes the resolution of disputes without a needless call upon court resources (Dkt. No.66 at 2-3).  Yet the Court suspects that its admonishment has not been heeded, as correspondence Moseti has since filed suggests that he views the conference requirement as satisfied by emails making demands, sometimes for more than what is required by the discovery he propounded or the procedural rules (*see* Dkt. No. 76-2).

---

[3] The discovery procedures discussed in the following section do not apply to the motion for an award of reasonable expenses authorized herein, if it is filed.

While the instant Motion has been pending and awaiting a decision, Moseti filed yet another, his fourth, motion to compel (Dkt. No. 76), which does not constitute an adequate brief. *See* N.D. Tex. L. Civ. R. 7.1(d) ("An opposed motion must be accompanied by a brief that sets forth the moving party's contentions of fact and/or law, and argument and authorities[.]"); *see also Grimes v. Santander Consumer USA*, No. 3:22-CV-1933-X-BH, 2023 WL 5022276, at *5 (N.D. Tex. July 13, 2023), *accepted*, 2023 WL 5021786 (N.D. Tex. Aug. 5, 2023). Rather, it is merely a list of discovery requests accompanied by a few words describing each request or response. In most every instance, Moseti merely registers his disagreement with the response given; he does not explain why, according to procedural rules or applicable caselaw, the response is deficient or explain that he is entitled to a court order requiring something more. As to document requests, he apparently has not confirmed that Mary Kay is withholding potentially responsive documents based on any objection and is possibly seeking a court order to produce documents that either have been produced or do not exist. The Court **DENIES** the Fourth Motion to Compel Discovery as inadequately briefed.[4] *See Wright v. Minardi*, No. 22-11126, 2023 WL 6892185, at *1 (5th Cir. Oct. 19, 2023) (unpublished) (noting that, although briefs are

---

[4] The Court has considered Mary Kay's response (Dkt. No. 77) and Moseti's reply (Dkt. No. 78), both of which were filed shortly before the Court issued this memorandum opinion and order. These filings do not alter the Court's assessment of the motion as inadequately briefed, but they underscore the necessity of a more robust pre-motion conference and the reasonable assessment of the merits of discovery motions. If after considering the Court's ruling, Moseti persists in his belief that he is entitled to additional discovery based on his second set of requests, he may follow the procedures outlined.

entitled to liberal construction, "even pro se litigants must brief arguments" and reasonably comply with procedural rules).   As the Court has explained and reiterates here, Moseti's mere disagreement with the information produced in discovery does not provide grounds for sanctions or an order compelling Mary Kay to provide a different response.  That he continues to file discovery motions on such grounds suggests that his persistence might be a strategic choice rather than the result of inexperience or a lack of legal training.

Moseti's unmeritorious discovery motions unnecessarily increase the cost of litigation and burdens the Court.  *See* Fed. R. Civ. P. 1 (providing that the Federal Rules of Civil Procedure "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding").  The Court therefore finds that it is appropriate to implement new discovery procedures requiring the parties to make serious attempts to resolve all discovery issues without court intervention.  If such efforts prove unsuccessful, the parties shall strictly adhere to the procedures below.  Failure to comply with these procedures may result in sanctions.

1.  If any party or counsel intends to file a motion concerning the conduct of discovery—including a motion to compel, motion for protective order, or any motion seeking the imposition of sanctions relating to discovery—that party or counsel must meaningfully engage in a good-faith conference **by phone, videoconference, or in person** to resolve the discovery issue(s).  If the parties fail to resolve all discovery issues after the good-faith conference such that either party

-20-

wishes to seek court intervention, the parties must file within **four business days** following completion of the conference a Joint Advisory.  Email exchanges will not satisfy the conference requirement, nor will abbreviated conferences in which the parties fail to substantively engage in good-faith efforts to resolve their dispute(s).

2.    The Joint Advisory filed shall include: (1) a brief summary of the discovery dispute; (2) the grounds for seeking and opposing the requested discovery, including applicable citations to any particularly relevant authority; (3) the date(s) and mode(s) (e.g., phone, videoconference, or in person) by which the parties conferred in an attempt to resolve the dispute(s); (4) the duration of the conference(s), participant names, and topics discussed during the conference(s); (5) the party that wishes to file a discovery motion and the precise type of motion sought.  **This Joint Advisory may not exceed four double-spaced pages in substance**, and it must be signed by Moseti and counsel for Defendant.[5]  After reviewing the Joint Advisory, the Court will consider whether to grant leave to file a motion to compel, motion for protective order, or other discovery motion.  If the Court grants leave, it may also set an abbreviated briefing schedule for the motion.

3.  The Court will order that any motion filed without completion of the conference and Joint Advisory be unfiled.  *See Open Cheer & Dance Championship Series, LLC v. Varsity Spirit, LLC*, No. 2:23-CV-155-Z, 2025 WL 3004593, at *8-9

---

[5] The Court will accept an electronic signature affixed by the opposing party or counsel provided that the party affixing the signature has received written authorization from the signatory to do so.

(N.D. Tex. Oct. 27, 2025) (discussing authority to unfile documents in similar circumstances).

The parties are expected to follow these procedures immediately.  Failure to do so may result in sanctions.

## IV.  CONCLUSION

Plaintiff's Motion to Compel Defendant's Discovery Responses filed September 18, 2025 (Dkt. No. 67) is **GRANTED** with respect to Defendant's response to Interrogatory No. 2 and **DENIED** in all other respects.  Plaintiff's Fourth Motion to Compel Discovery (Dkt. No. 76) and Plaintiff's Motion to for Leave (Dkt. No. 74) to file accompanying documents under seal are **DENIED**.  The parties are **ORDERED** to follow the new procedures for the resolution of discovery disputes.

**SO ORDERED** on November 12, 2025.

_____
BRIAN McKAY
UNITED STATES MAGISTRATE JUDGE